## ANEES U. RANA *v.* HARRY TERDJANIAN
## (AC 33428)

Lavine, Robinson and Bear, Js.

---

Argued March 20—officially released June 5, 2012

*Harold J. Geragosian*, for the appellant (defendant).

*William B. Wynne*, with whom, on the brief, was *Lawrence H. Adler*, for the appellee (substitute plaintiff).

*Opinion*

ROBINSON, J. The defendant, Harry Terdjanian, appeals from the trial court's judgment rendered in favor of the substitute plaintiff, Rana Automaster, LLC,[1] for conversion, statutory theft and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and from the court's subsequent award of offer of judgment interest and attorney's fees. The defendant claims that the court improperly (1) denied his motions to dismiss the action, (2) determined that the defendant had committed statutory theft under General Statutes § 52-564, (3) awarded the plaintiff attorney's fees, (4) concluded that the

---

[1] As discussed later in the opinion, although this action originally was commenced by the named plaintiff, Anees U. Rana, the trial court later granted a motion to substitute Rana Automaster, LLC, as the real plaintiff in interest in accordance with General Statutes § 52-109. Accordingly, we refer to Rana Automaster, LLC, as the plaintiff throughout this opinion.

defendant was not shielded from liability by his limited liability company, (5) determined that the defendant converted funds and (6) determined that the defendant violated CUTPA. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review. In 2001, the defendant, through a limited liability company, owned two auto repair businesses, each operating under the name Automaster Service Center. One business was located in Wethersfield; the other was located in Southington. American Express Company (American Express) authorized the defendant's businesses to accept American Express credit card payments and assigned each business its own unique "establishment number."[2]

In July, 2001, the plaintiff purchased the Wethersfield business from the defendant. After the sale, the defendant neglected to advise American Express of the sale and to cancel the establishment number assigned to the Wethersfield business. The plaintiff meanwhile obtained its own authorization from American Express to accept American Express credit card payments, and American Express issued the plaintiff a new establishment number for the Wethersfield business. Because the defendant never cancelled the old establishment number associated with the Wethersfield business, the plaintiff continued to receive statements associated with the old establishment number from American Express. Nevertheless, because the company that processed payments from American Express to the plaintiff had the plaintiff's correct establishment number and associated bank account number, no issues initially arose as a result of the failure to cancel the old establishment number.

[2] According to the record, an establishment number is the account number that American Express assigns in order to identify each merchant and to aid in the processing of payments to the merchant.

The plaintiff, however, changed credit card processing companies in August, 2006. Anees U. Rana, who operated the Wethersfield business for the plaintiff, completed the application required by the new processing company. In so doing, Rana mistakenly referred to one of the statements containing the defendant's old establishment number and listed that old establishment number on the application as the establishment number for the current Wethersfield business. Because of that mistake, between August, 2006, and July, 2007, the new processing company deposited American Express payments for work done at the plaintiff's Wethersfield business into the defendant's bank account because that was the account associated with the old establishment number. Rana did not notice the error until May, 2007, at which time he contacted American Express. After conducting an investigation, American Express acknowledged that payments had been deposited erroneously into the defendant's bank account. American Express was able to transfer $961.31 associated with a June 14, 2007 payment from the defendant's account to the plaintiff's account, but it advised the plaintiff that it was not authorized to make any additional transfers because of its standard agreement with American Express merchants.

Rana contacted the defendant seeking repayment of $5133.95 in additional deposits that the processing company erroneously had paid into the defendant's bank account. Rana provided the defendant with documentation for the erroneous deposits, including statements from American Express, and met with the defendant on several occasions to resolve the matter and to secure repayment of the misdirected funds. The defendant, however, would not agree to reimburse the plaintiff.

In March, 2008, Rana commenced this action against the defendant in small claims court as a self-represented

party. In July, 2008, the defendant had the matter transferred to the regular docket of the Superior Court pursuant to Practice Book § 24-21. Rana obtained counsel, who filed a four count complaint alleging conversion, statutory theft, unjust enrichment and a CUTPA violation.[3] On April 21, 2010, Rana filed an offer to settle his claims against the defendant for $5000 pursuant to General Statutes § 52-192a, but the defendant did not accept the offer within the applicable statutory time frame.

The case was tried to the court over the course of three days between October 6 and November 9, 2010. On the second day of trial, during cross-examination of Rana by the defendant, it was brought to light that the operative complaint incorrectly alleged that Rana had obtained the Wethersfield business from the defendant in 2006, when, in fact, the business had been obtained in 2001 by the plaintiff, not by Rana. Rana further testified that his wife, Farhana Y. Syed, was the plaintiff's sole member, and that he operated the business and was the plaintiff's agent for service. After the close of Rana's case-in-chief, the court, citing General Statutes §§ 34-134[4] and 34-187,[5] raised, sua sponte,

---

[3] The defendant filed a counterclaim alleging invasion of privacy and a CUTPA violation. The court, following the defendant's presentation of evidence in support of his counterclaim, rendered judgment on the counterclaim in favor of the plaintiff. The defendant does not challenge the court's judgment on the counterclaim as part of this appeal.

[4] General Statutes § 34-134 provides: "A member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement."

[5] General Statutes § 34-187 (a) provides: "Except as otherwise provided in an operating agreement, suit on behalf of the limited liability company may be brought in the name of the limited liability company by: (1) Any member or members of a limited liability company, whether or not the articles of organization vest management of the limited liability company in one or more managers, who are authorized to sue by the vote of a majority in interest of the members, unless the vote of all members shall be required

the issue of whether Rana had standing to bring the action on behalf of his wife's limited liability company.[6] The court gave counsel until October 22, 2010, to file a memorandum explaining "how it is that [Rana] has standing to bring this action in his individual capacity."

On October 22, 2010, rather than briefing the standing issue, Rana's counsel filed a motion pursuant to General Statutes § 52-109 and Practice Book § 9-20 seeking to substitute the plaintiff and Syed for Rana as the real parties in interest and for leave to amend the complaint. A proposed fourth amended complaint was submitted along with the motion. According to the motion, Rana was in charge of the plaintiff's finances, he was the agent for service, and he ran "all managerial aspects of the business." The motion further provided that Rana had a good faith belief that he was a part owner of the business and, thus, was personally entitled to seek repayment from the defendant. Rana's counsel indicated that he also had had a good faith belief that Rana was the proper plaintiff based on Rana's representations to him and the fact that Rana's name appeared on credit card and bank documents. Finally, Rana's counsel provided that the proposed substitution was necessary "for the determination of the real matter in dispute" because it now was apparent that the plaintiff was owed the monies erroneously transferred into the defendant's account.

On October 28, 2010, the defendant filed an objection to the motion to substitute. He also filed a motion to dismiss pursuant to Practice Book § 10-30 et seq., claiming that the court lacked subject matter jurisdiction and

pursuant to subsection (b) of section 34-142; or (2) any manager or managers of a limited liability company, if the articles of organization vest management of the limited liability company in one or more managers, who are authorized to sue by the vote required pursuant to section 34-142."

[6] The defendant raised the issue of Rana's standing as a special defense, but he never filed a motion to dismiss on that basis prior to the court's raising the issue at trial.

a motion to dismiss pursuant to Practice Book § 15-8 claiming that Rana had failed to make out a prima facie case because he had "no individual right of action."[7] On November 1, 2010, the court denied the defendant's motions to dismiss without comment and granted Rana's motion to substitute Rana Automaster, LLC, as the plaintiff and for leave to amend the complaint. The court indicated that it had jurisdiction to consider the motion to substitute despite the fact that a motion to dismiss for lack of standing was pending. The court determined that Rana had commenced the small claims action in his own name by mistake, on the basis of an honest conviction, entertained in good faith, that he was the proper party to commence the action. The court further concluded that because the funds at issue in the case were payable to the plaintiff, the requested substitution was necessary for a determination of the real matters in dispute. The court found that the defendant would not be prejudiced by the substitution because the causes of action alleged in the complaint had not changed and the defendant's ability to defend against the allegations therefore was unaffected.

The trial resumed on November 9, 2010, with the defendant's presentation of evidence. On March 17, 2011, the trial court issued a memorandum of decision finding in favor of the plaintiff on the conversion, statutory theft and CUTPA counts. The court rendered judgment for the defendant on the unjust enrichment count.

---

[7] The underlying premise for both of the defendant's motions to dismiss was that Rana was not the proper party to commence the action before the trial court. According to the defendant, Rana's lack of standing prevented the trial court from acquiring subject matter jurisdiction and also meant that Rana could not have established a prima facie case as to the causes of actions alleged. On appeal, the defendant briefed the court's denial of his motions to dismiss as a single claim, focusing on Rana's lack of standing. The defendant does not address the evidence presented or any aspect of a failure to make out a prima facie case in accordance with Practice Book § 15-8. Accordingly, in reviewing the court's denial of the defendant's motions to dismiss, we limit our review to the issue of standing.

The court found that the plaintiff had proven damages of $5133.95, and awarded the plaintiff treble damages on the statutory theft count of $15,401.85 plus interest and attorney's fees to be determined by the court after a hearing on April 4, 2011. On April 5, 2011, the court issued a decision in which it awarded the plaintiff an additional $1174.76 in offer of judgment interest and $10,000 in attorney's fees. The defendant filed a motion to reargue and for reconsideration. The court reconsidered its decision, but it saw "no reason to depart from its conclusions in that decision." This appeal followed.

I

The defendant first claims that the court improperly denied his motions to dismiss. According to the defendant, once it was raised by the court and in his motions to dismiss that Rana lacked the requisite legal standing to commence this action, the court lacked the authority to do anything other than to rule on the motions to dismiss, and the court exceeded its authority when it simultaneously considered and granted the motion to substitute the plaintiff as the real party in interest. The plaintiff argues that the court properly substituted it for Rana, thereby negating any standing problem that may have existed and, accordingly, properly denied the motions to dismiss. For the following reasons, we agree with the plaintiff.

The standard of review we apply when determining whether a court properly denied a motion to dismiss for lack of subject matter jurisdiction is well settled. "A determination regarding a trial court's subject matter jurisdiction is a question of law. . . . When the trial court draws conclusions of law, appellate review is plenary, and the reviewing court must decide whether the trial court's conclusions are legally and logically correct." (Citation omitted.) *Bloom* v. *Dept. of Labor*, 93 Conn. App. 37, 39, 888 A.2d 115, cert. denied, 277

Conn. 912, 894 A.2d 992 (2006). We further recognize
that "[t]he decision whether to grant a motion for the
addition or substitution of a party to legal proceedings
rests in the sound discretion of the trial court. . . . In
reviewing the trial court's exercise of that discretion,
every reasonable presumption should be indulged in
favor of its correctness . . . and only if its action dis-
closes a clear abuse of discretion is our interference
warranted." (Internal quotation marks omitted.) *Wickes
Mfg. Co.* v. *Currier Electric Co.*, 25 Conn. App. 751,
760, 596 A.2d 1331 (1991).

As noted by the defendant, courts in this state repeat-
edly have stated that "[t]he issue of standing implicates
subject matter jurisdiction and is therefore a basis for
granting a motion to dismiss." (Internal quotation marks
omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145,
164, 2 A.3d 873 (2010). It is similarly well settled that
"[o]nce the question of lack of jurisdiction of a court
is raised, [it] must be disposed of no matter in what form
it is presented . . . and the court must fully resolve
it before proceeding further with the case." (Internal
quotation marks omitted.) *Golden Hill Paugussett
Tribe of Indians* v. *Southbury*, 231 Conn. 563, 570, 651
A.2d 1246 (1995); see also *Baldwin Piano & Organ
Co.* v. *Blake*, 186 Conn. 295, 297, 441 A.2d 183 (1982)
("[w]henever the absence of jurisdiction is brought to
the notice of the court or tribunal, cognizance of it must
be taken and the matter passed upon before it can
move one further step in the cause; as any movement
is necessarily the exercise of jurisdiction" [internal quo-
tation marks omitted]).

In the present case, the court first raised the standing
issue[8] and asked the parties to submit briefs on the
issue. Rather than submit a brief, Rana's counsel filed

---

[8] It was not until after Rana's motion to substitute was filed that the
defendant filed his motions to dismiss.

a motion to substitute the plaintiff for Rana pursuant to § 52-109. The issue of lack of standing clearly was raised prior to the filing of the motion to substitute and, according to the defendant, the court was required to resolve the standing issue and, if standing was lacking, as it appears to have been in the present case, to dismiss the action for lack of subject matter jurisdiction rather than taking the "further step" of considering the motion to substitute. We conclude that § 52-109 permits the court to consider a motion to substitute in the face of a pending motion to dismiss.

In *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 998 A.2d 730 (2010), our Supreme Court discussed in some detail § 52-109, which provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." The Supreme Court noted that "[o]ur rules of practice . . . permit the substitution of parties *as the interests of justice require.* . . . These rules are to be construed so as to alter the harsh and inefficient result that attached to the mispleading of parties at common law . . . . General Statutes § 52-109 and [what is now] Practice Book § [9-20] allow a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as plaintiff . . . . *Both rules, of necessity, relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 150. The court further recognized that our rules regarding substitution of parties are analogous to the federal rules and that federal courts have observed "that [when]

the change is made on the plaintiff's side to supply an indispensable party or to correct a mistake in ascertaining the real party in interest, in order to pursue effectively the original claim, the defendant will rarely be unfairly prejudiced by letting the amendment relate back to the original pleading. . . . As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added . . . . Thus, an amendment substituting a new plaintiff [will] relate back if the added plaintiff is the real party in interest." (Citation omitted; internal quotation marks omitted.) Id., 150–51. The *DiLieto* court also favorably cited federal law for the proposition that the substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff. Id., 151.

"[R]emedial statutes such as [§ 52-109] were intended to soften the otherwise harsh consequences of strict construction under the common law: Over-technical formal requirements have ever been a problem of the common law, leading [legislative bodies] at periodic intervals to enact statutes . . . [that], in substance, told the courts to be reasonable in their search for technical perfection. . . . Under § 52-109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff through mistake, which properly has been interpreted to mean an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action]. . . . [O]nce such a determination is made . . . the substituted party is let in to carry on a pending suit, and is not regarded as commencing a new one. After he is substituted he is . . . treated and regarded for most purposes just as if he had commenced the suit originally. The writ, the complaint, the service of

process, attachment made, bonds given, the entry of the case in court, the pleadings if need be, in short all things done in the case by or in favor of the original plaintiff . . . remain for the benefit of the plaintiff who succeeds him, as if done by and for him originally and just as if no change of parties had been made. So far as the defendant is concerned, the same suit upon the same cause of action, under the same complaint and pleadings substantially in most cases, goes forward to its final and legitimate conclusion as if no change had been made." (Citations omitted; internal quotation marks omitted.) Id., 151–52.

On the basis of the Supreme Court's discussion in *DiLieto* of the remedial purpose underlying § 52-109, we conclude that it is well within the authority of a court to permit a substitution of plaintiffs in lieu of dismissing an action provided that the court determines that the conditions set forth in § 52-109 have been met. We also agree with the reasoning of a number of trial court decisions that have considered the same jurisdictional conundrum now before us that "if § 52-109 is to have the ameliorative purpose for which it was intended, then even assuming that the specter of subject matter jurisdiction rears its head, the statute is meant to give the trial courts jurisdiction for the limited purpose of determining if the action should be saved from dismissal by the substitution of plaintiffs." (Internal quotation marks omitted.) *Wilson* v. *Zemba*, 49 Conn. Sup. 542, 553, 896 A.2d 862 (2004), citing *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0150435-S (January 31, 2000) (26 Conn. L. Rptr. 345), rev'd on other grounds, 265 Conn. 79, 828 A.2d 31 (2003). As the trial court in *DiLieto* aptly stated in its decision: "The legislature's provision of this statutory remedy would be completely

undermined by any rule requiring the immediate dismissal for lack of subject-matter jurisdiction of any action commenced in the name of the wrong person as plaintiff. The statute, as an exercise of the legislature's constitutional authority to determine [our court's] jurisdiction; [Conn. Const., art. V, § 1]; must be seen as an extension of that jurisdiction for the limited purpose of deciding a proper motion to substitute." *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 26 Conn. L. Rptr. 348.

In the present case, the court found in its November 1, 2010 decision that the criteria necessary to permit a substitution pursuant to § 52-109 were satisfied. The court found that Rana had commenced the small claims action in his name by mistake, in ignorance of General Statutes §§ 34-134, 34-186 and 34-187. On the basis of the evidence of Rana's extensive role in operating the plaintiff's Wethersfield business, the court found that he had an honest conviction, entertained in good faith and not resulting from his own negligence, that he was the proper party to commence the action. The court found that because the funds allegedly being withheld by the defendant were payable to the plaintiff, the requested substitution certainly was necessary for a determination of the real matters in dispute. Finally, the court found that allowing a substitution in this case would not prejudice the defendant because the causes of action alleged in the complaint would not change and the defendant's ability to defend against the allegations would not be affected. The defendant has provided nothing from which we can determine that the court's findings were clearly erroneous. Once the plaintiff was substituted for Rana, the standing issue that the court had identified and on which the defendant had relied as the basis for his motions to dismiss was remedied. Accordingly, we conclude that the court's decision to

deny the defendant's motions to dismiss was both legally and logically correct.

## II

The defendant next claims that the trial court erred by finding him liable for statutory theft pursuant to § 52-564. Specifically, the defendant argues that there was no evidence presented at trial of a theft in this case or that the defendant had stolen property from the plaintiff or knowingly received or concealed stolen property, and, therefore, the court erred by imposing liability for statutory theft. We disagree.

The following standard of review is applicable in cases in which a party challenges the sufficiency of the evidence. "[W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . ." (Citations omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 322, 796 A.2d 516 (2002).

Section 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." We consistently have held that "[s]tatutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 700, 992 A.2d 1219 (2010); see also *Lauder* v. *Peck*, 11 Conn. App. 161, 165, 526 A.2d 539 (1987) ("[t]he word 'steals' as used in . . . § 52-564 is synonymous with the

definition of larceny under . . . § 53a-119"). "A person commits larceny within the meaning of . . . § 53a-119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. An owner is defined, for purposes of § 53a-119, as any person who has a right to possession superior to that of a taker, obtainer or withholder. General Statutes § 53a-118 (a) (5)." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, supra, 700. "Conversion can be distinguished from statutory theft as established by § 53a-119 in two ways. First, statutory theft requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 521, 705 A.2d 215 (1998).

In order to prove liability for statutory theft, therefore, the plaintiff was not required to present evidence that the funds in question had been stolen by the defendant or anyone else; it only had to show that the defendant had engaged in conduct that was synonymous with a larceny. Section 53a-119 (4) provides in relevant part that "[a] person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of larceny if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it." Accordingly, the defendant could be found liable for statutory theft if he wrongfully withheld funds that rightfully belonged to the plaintiff with the intent to deprive it of those funds or to appropriate the funds for himself or his business.

Here, the court found that the defendant had possession of funds that rightfully belonged to the plaintiff as compensation for services performed at the plaintiff's Wethersfield business. That finding is supported by the American Express documents entered into evidence and the testimony of an American Express representative, both of which established that monies for services performed at the plaintiff's Wethersfield business that should have been deposited into the plaintiff's account mistakenly had been deposited into the defendant's business account. The court noted that the defendant's initial possession of those funds may not have been wrongful and, in fact, partly was due to Rana's negligence in providing the processing company with the defendant's former establishment number; nevertheless, it concluded that the defendant wrongfully refused to return the money even after being provided with documentation by Rana that established beyond any doubt that the funds at issue had been deposited in error into the bank account of the defendant's limited liability company. Rana testified that he had met with the defendant on several different occasions prior to commencing this action and had provided the defendant with documents showing the erroneous deposits and that the defendant had even spoken with an American Express representative about the funds misdirected to his account. The court found that, given the defendant's knowledge concerning the source and disposition of the funds in question, the defendant's continued failure to return the funds to the plaintiff constituted an intentional decision on his part to deprive the plaintiff of its use of the funds. Our review of the record reveals that the factual findings of the court, as set forth in the court's memorandum of decision, are supported by evidence presented at trial and, as a matter of law, are sufficient to support the imposition of liability for statutory theft.

## III

The defendant's third claim on appeal is that the trial court improperly awarded the plaintiff $10,000 in attorney's fees. In particular, the defendant suggests that the plaintiff had sought attorney's fees pursuant to only § 52-192a, which limits the award of attorney's fees to $350, and that the court erred in awarding attorney's fees pursuant to General Statutes § 52-251a. The defendant's arguments are without merit.

"We review the award of attorney's fees for a clear abuse of discretion. Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . [W]e may not alter an award of attorney's fees unless the trial court has clearly abused its discretion . . . ." (Internal quotation marks omitted.) *Krack* v. *Action Motors Corp.*, 87 Conn. App. 687, 694–95, 867 A.2d 86, cert. denied, 273 Conn. 926, 871 A.2d 1031 (2005).

As the defendant correctly sets forth in his brief, "[a]s a substantive matter, [t]his state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." (Internal quotation marks omitted.) *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004). The defendant argues that the plaintiff filed an offer of compromise pursuant to § 52-192a and that, pursuant to § 52-192a, "[i]f the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise . . . [t]he court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars . . . ." General Statutes § 52-192a (c). The defendant suggests that the offer of compromise was the only

pleading filed by the plaintiff pursuant to which the court could have awarded attorney's fees, and, therefore, the court abused its discretion by awarding $10,000 in attorney's fees, which greatly exceeded the three hundred fifty dollar limit.

In the ad damnum clause of the operative complaint, however, the plaintiff expressly sought an award of attorney's fees pursuant to both General Statutes §§ 52-251a and 42-110g (d). The court, in its decision awarding attorney's fees, expressly found that the plaintiff was entitled to reasonable attorney's fees pursuant to § 52-251a, which provides: "Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the Superior Court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court." The present action was commenced as a small claims matter and was transferred to the regular docket pursuant to the defendant's motion.

The court found that, by transferring the case from small claims to the regular docket, the matter was transformed from a relatively straightforward case to a "pitched legal battle," which is precisely what § 52-251a was intended to deter. *Krack* v. *Action Motors Corp.*, supra, 87 Conn. App. 697; see also *Burns* v. *Bennett*, 220 Conn. 162, 169, 595 A.2d 877 (1991) ("[§] 52-251a thus creates a substantial and effective disincentive for a defendant who might otherwise raise defenses bordering on the frivolous in an effort to gain a tactical advantage over a plaintiff by obtaining a transfer of a case from the Small Claims division"). As the court found in its memorandum of decision on the merits, the small claims complaint "simply prayed for the return of [the mistakenly deposited] funds," but, once transferred to the regular docket, the matter was transformed into a four count action with a counterclaim. Although the court declined to find that the matter was transferred in

bad faith, it did conclude that the defendant's defenses bordered on frivolous. The defendant does not challenge the reasonableness of the attorney's fees awarded, only that the court lacked the authority to make such an award. Because the plaintiff prevailed at trial, we conclude that it was well within the court's discretion under § 52-251a to award the plaintiff reasonable attorney's fees.

IV

The defendant next claims that the court improperly found that the defendant individually was liable to the plaintiff despite the fact that he operated his business through a limited liability company. In support of his claim, the defendant primarily relies on General Statutes §§ 34-133 (a) and 34-134. The defendant maintains that it was the legislature's intent to eliminate individual liability for members of limited liability companies, except in cases in which the limited liability companies provide professional services. We disagree. Rather, we agree with the court that the defendant was not shielded from liability by his limited liability company.

Whether the defendant personally could be found liable under the facts of this case in the face of §§ 34-133 and 34-134 is an issue of statutory construction over which our review is plenary. See *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 175, 9 A.3d 326 (2010). Section 34-133 (a) provides in relevant part that "a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company." Section 34-134 provides in relevant part that "[a] member or

manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company . . . ."

Our Supreme Court has held that the legislature's enactment of §§ 34-133 and 34-134 "evinces no legislative intent to eliminate the right to impose liability on a member or manager of a limited liability company who has engaged in or participated in the commission of tortious conduct. Rather, the statute merely codifies the well established principle that an officer of a corporation does not incur personal liability for [the corporation's] torts merely because of his official position." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 137, 2 A.3d 859 (2010). It is equally well established, however, that when "an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby. . . . Thus, a director or officer who commits the tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort." (Internal quotation marks omitted.) Id., 132, citing *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 141–42, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006).

In the present case, a review of the operative complaint shows that the plaintiff sought to impose liability on the defendant on the basis of his personal conduct. The court found that this case did not involve "pierc[ing] the corporate veil" because it involved tortious conduct on the part of the individual defendant. Specifically, the court found that even after the plaintiff presented the defendant with documentation that "demonstrated beyond a doubt that the funds had been deposited to the

bank account of the limited liability company through which [the defendant] operated the Southington business," the defendant wrongfully chose to withhold repayment of the misdirected funds. The court also noted the defendant's testimony that he had unfettered access to the bank account of his limited liability company.

We conclude that the court did not violate §§ 34-133 or 34-134. Under the facts of the present case, we cannot conclude that it was reversible error for the court to hold the defendant personally liable when it was wholly within the defendant's power to return the misdirected funds to the plaintiff and he wrongfully chose not to do so.

V

The defendant next claims that the court erroneously found that the defendant committed conversion because he never made an "absolute and unqualified refusal" to return the plaintiff's funds, and all he ever wanted was for American Express to supply him with written confirmation "to clear the smoke and confusion that engulfed him even through the trial, all of which was created by the plaintiff and not him."[9] The defendant's claim is without merit.

When a defendant is claiming that the record does not contain sufficient evidence to support a finding of conversion, "[t]he applicable standard of review is

---

[9] In addressing this claim, the defendant also raises his belief that the court erred in determining that he had committed conversion because the plaintiff had unclean hands. The defendant, however, does nothing more than state that claim. To obtain appellate review, claims require adequate briefing, and "[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Dichello* v. *Holgrath Corp.*, 49 Conn. App. 339, 348 n.8, 715 A.2d 765 (1998).

whether the court's conclusion that the evidence supported the finding of conversion was clearly erroneous." *Aubin* v. *Miller*, 64 Conn. App. 781, 796, 781 A.2d 396 (2001). "Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights." (Internal quotation marks omitted.) *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 164 (1994). It is possible for a conversion to arise subsequent to an initial rightful possession. Id.

The evidence that supported the court's conclusion that the defendant was liable for statutory theft, discussed earlier in this opinion, also supports the court's finding of conversion. Although the court found that the defendant's initial possession of the funds at issue was not wrongful, it also found that the defendant's continued possession after Rana provided him with documentation establishing that the funds had been deposited into his business' bank account in error was wrongful and amounted to an unauthorized possession of those funds. The defendant claims that to be found liable for conversion he needed to make an "absolute and unqualified refusal" to return the plaintiff's funds. It is undisputed that "[w]here goods originally in the rightful possession of a person are wrongfully retained by him without the exercise of dominion over them, a demand and its refusal afford the necessary evidence of a conversion." *Molski* v. *Bendza*, 116 Conn. 710, 711, 164 A. 387 (1933). The court in the present case specifically found that Rana, the plaintiff's agent, on several occasions demanded the return of the money, and the defendant's failure to return the funds evinced his unqualified refusal to comply. The court's conclusion that the evidence supported the finding of conversion was not clearly erroneous.

VI

Finally, the defendant claims that the court improperly found that there was a CUTPA violation. In addition to restating his argument that he is immune from liability by virtue of his limited liability company, which we already have rejected, the defendant asserts that he "was completely passive and engaged in no action that may be deemed to be immoral, unethical, oppressive or unscrupulous . . . ." We disagree with that assertion.

"It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Chamlink Corp.* v. *Merritt Extruder Corp.*, 96 Conn. App. 183, 189, 899 A.2d 90 (2006).

"[General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial

injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness." (Internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 350, 994 A.2d 153 (2010).

The court found that the plaintiff had proven a CUTPA violation because "[t]he defendant's theft of the plaintiff's funds violates the statutes proscribing conversion and theft and, by any standard, qualifies as 'immoral, unethical, oppressive [and] unscrupulous.' " Having already concluded that the court properly determined that the defendant was liable for statutory theft and conversion, we cannot conclude that the court erroneously relied on the same as the basis for its finding that the defendant had committed an unfair or deceptive act as proscribed under CUTPA.

The judgment is affirmed.

In this opinion the other judges concurred.

