## MARVIN WILSON, JR., ET AL. *v.* CHRISTOPHER K. ZEMBA

Superior Court, Judicial District of New Haven
File No. CV-03-0484071S

Memorandum filed November 16, 2004

*Charles J. Riether*, for the plaintiffs.

*Law Offices of Amy G. Nord*, for the defendant.

CORRADINO, J. Before the court is a motion to dismiss filed by the defendant, Christopher K. Zemba. The motion filed by the plaintiff Marvin Wilson, Jr., to substitute Tymar Wilson as plaintiff and request to amend

the complaint arise out of the filing of the motion to dismiss and represent an attempt to avoid it. As will be discussed, the motion to dismiss argues that the court has no subject matter jurisdiction over the present case because the complaint identifies the parent, Marvin Wilson, Jr., as the plaintiff and not the minor child, who is named Tymar Wilson.

It is necessary to review the pleadings and some history of the litigation to decide this question. The return date is November 25, 2003.

In the present case, the "first named plaintiff" section in the summons identifies "Wilson, Marvin, Jr. PPA" as the plaintiff. The "Additional Plaintiff" box identifies "Wilson, Tymar." The complaint itself is captioned "Marvin Wilson, Jr. PPA for the minor Tymar Wilson." Paragraph two of the complaint states: "At all times mentioned herein, Tymar Wilson is a minor, and brings this action by the plaintiff, Marvin Wilson, Jr. his father and next friend."

The rest of the complaint makes various factual allegations concerning a motor vehicle accident that is alleged to have been caused by the defendant's negligence. Paragraph five says the vehicle "in which the plaintiff was a passenger" was rear-ended by the defendant, "causing the plaintiff, Tymar Wilson," various injuries. Paragraph six states that the collision and damages "to the plaintiff" were caused by the defendant's negligence. Paragraph seven says that as a result of the collision, the "plaintiff" was hurled violently about the inside of the vehicle." Paragraphs eight, nine and ten talk of injuries and damages to "the plaintiff" caused by the accident.

Following the numbered paragraphs the following sentence appears: "Wherefore, the plaintiff claims money damages." The "Claim for Relief" on a separate

page states again that "the plaintiff seeks money damages." Beneath the "Claim for Relief" the following appears:

"The Plaintiff*s* (Emphasis added.) Marvin Wilson PPA for the Minor Tymar Wilson

By _____ "

(The attorney's name then appears and it is stated that he is "their" attorney.)

On April 27, 2004, the defendant filed the motion to dismiss that is now before the court. It argues that the court has no subject matter jurisdiction over the present case because "the complaint improperly identifies the parent of the minor child as the plaintiff." The named plaintiff, Marvin Wilson, Jr., is, according to the complaint, "the father of Tymar Wilson." As the defendant's counsel notes, it was stated in *Botelho* v. *Curtis*, 28 Conn. Sup. 493, 495–96, 267 A.2d 675 (1970): "The next friend of an infant cannot maintain a suit in his own name, but the suit must be brought in the name of the infant. The process must run in the name of the infant by his next friend and not in the name of the next friend acting for the infant."

Following the filing of the motion to dismiss, the "plaintiff" filed a "motion to substitute plaintiff" and a "request for leave to amend the complaint" along with the motion to substitute, and an "objection to the motion to dismiss."

The basic argument of the defendant is that the plaintiff father has no standing to sue, and, therefore, the court has no subject matter jurisdiction.

A certain lockstep analysis is then applied in these situations as follows: "Whenever the absence of jurisdiction of a proceeding is brought to the notice of a court, cognizance of the fact must be taken and the

matter determined before it can move a further step in the case. . . . Jurisdiction to entertain a particular proceeding cannot be conferred by waiver or consent." (Citation omitted.) *Marcil* v. *Merriam & Sons, Inc.*, 115 Conn. 678, 682, 163 A. 411 (1932).Citing *Marcil*, Judge Harrigan noted that it is also true that "the court can dismiss an action for lack of subject matter jurisdiction on its own motion." *D'Aloia* v. *D'Aloia*, Superior Court, judicial district of Waterbury, Docket No. 0112280 (March 22, 1994) (9 C.S.C.R. 396); see also *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). Subject matter jurisdiction "addresses the basic competency of the court." *Daley* v. *Hartford*, 215 Conn. 14, 27–28, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). The Supreme Court itself can address the issue even without the suggestion of the parties and, if it is apparent that there is no such jurisdiction, "the court shall dismiss the action." (Internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 52, 794 A.2d 498 (2002); cf. *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698–99, 620 A.2d 780 (1993).

Subject matter jurisdiction or the lack thereof, however, can be an elusive concept depending on the particular context in which it is raised. Here, the issue before the court is the claim that the action was, in effect, brought by the wrong plaintiff and, as *Botelho* indicates, the suit cannot be brought in the name of the parent as next friend but must be brought in the name of the infant. *Botelho* v. *Curtis*, supra, 28 Conn. Sup. 495–96.

An analysis requiring dismissal because of a lack of subject matter jurisdiction under the circumstances of a case like the present one is evidently an outgrowth of the old notion at common law that "prohibits an entire change of plaintiffs by the substitution of new persons in the place of those who originally brought suit. The reason for the general rule is that an entire

change of plaintiffs is in effect a change in the cause of action." 59 Am. Jur. 2d 746, Parties § 320 (2002). If there is a completely new cause of action, the original plaintiff obviously has no standing to pursue the matter if the law of the jurisdiction gives him or her no right to bring a suit of a particular character. In fact, common-law cases have held "that when the complaint or bill in an infant's suit is filed not in the name of the infant but in the name of his or her next friend, the defect in the complaint or bill is not a mere technicality which can be cured by amendment, but is a ground for the dismissal of the suit." 42 Am. Jur. 2d 139, Infants § 176 (2000); see also *Ex parte Cabaniss,* 235 Ala. 181, 178 So. 1 (1937); *Ebbert* v. *Westfall,* 123 W. Va. 690, 17 S.E. 2d 787 (1941).

Some common-law cases, however, take a more beneficent and understandable approach. Thus, in *New York Evening Post Co.* v. *Chaloner,* 265 F. 204 (2d Cir.), cert. dismissed, 252 U.S. 591; 40 S. Ct. 396, 64 L. Ed. 731 (1920), the court observed: "At common law an entire change of plaintiffs is not allowable, being in effect regarded as a change of the cause of action. . . . The reason for the rule indicates its qualification, and where there is no change in the cause of action and the party substituted bears some relation of interest to the original party and to the suit the substitution is allowed. Thus a trustee may be substituted for his beneficiary. . . . And when an action is brought by a person who has the beneficial interest in the subject-matter, the person who has the legal right to sue may and should be substituted."(Citations omitted.) Id., 213.

Interestingly enough, in *Mendillo* v. *Board of Education,* 246 Conn. 456, 717 A.2d 1177 (1998), our Supreme Court made the following observation despite all the jeremiads about sua sponte obligations of courts whenever subject matter jurisdiction rears its head: "We note, however, that the minor plaintiffs purport to sue in their

own names, rather than by way of claims on their behalf by a parent or next friend. Neither they nor the plaintiff seek to explain why they are not governed by the general rule that minor children may only sue by way of a parent or next friend. . . . Because this question was not raised in the trial court or this court, however, we decide the validity of their derivative claims on the basis on which it was litigated in the trial court and argued in this court." (Citations omitted.) Id., 460 n.3.

Leaving aside the possible implications of *Mendillo*, however, this court will assume that there is a viable claim of lack of subject matter jurisdiction because suit was brought by the father as plaintiff and not by the father as next friend of the child. The court must examine whether there is a way to avoid dismissal of the action.

Whether the defendant's motion should be granted depends on the appropriate application of General Statutes § 52-109, which provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

Practice Book § 9-20 allows the courts to enforce this policy in language paralleling that of the statute.

There are excellent discussions of the appropriate application of the foregoing statute and rule of practice in several Superior Court cases. *Lupinacci* v. *Stamford*, 48 Conn. Sup. 1, 823 A.2d 456 (2002); *BKM Floorcovering, Inc.* v. *Orlando Annulli & Sons, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-98-0576713 (May 2, 2001) (29 Conn. L. Rptr. 657) (*Berger, J.*); *DiLieto* v. *County Obstetrics & Gynecology Group*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0150435S

(January 31, 2000) (*Sheldon, J.*) (26 Conn. L. Rptr. 345), rev'd on other grounds, 265 Conn. 79, 828 A.2d 31 (2003); see also W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Rules (2004 Ed.) § 9-20, comments, pp. 392–95.

If we analyze the problem before this court as one of subject matter jurisdiction as it is classically and rigidly understood, Judge Sheldon's position in *DiLieto* is quite convincing. He states: "Proof that an action was commenced 'in the name of the wrong person' would seem inexorably to establish that the original plaintiff has no standing to prosecute the action." *DiLieto* v. *County Obstetrics & Gynecology Group*, supra, 26 Conn. L. Rptr. 347. Then, however, the court would have no subject matter jurisdiction and, as noted, could entertain no motion to substitute but must dismiss the case. Judge Sheldon further states, however, that § 52-109 was passed to avoid this harsh result and that its purpose would be "completely undermined by any rule requiring the immediate dismissal for lack of subject matter jurisdiction of any action commenced in the name of the wrong person as plaintiff." Id., 348. This is permissible because, as Judge Sheldon points out, "[t]he statute, as an exercise of the legislature's constitutional authority to determine this court's jurisdiction [under the constitution of Connecticut, article fifth, § 1] must be seen as an extension of that jurisdiction for the limited purpose of deciding a proper motion to substitute." Id.; see also the discussion by Judge Lewis in *Lupinacci* v. *Stamford*, supra, 48 Conn. Sup. 1.

Another way of putting it might be to inquire what on earth is the purpose of § 52-109 if not to authorize the trial courts to proceed in the manner suggested by *DiLieto*.

The task of courts, according to *DiLieto*, and the other Superior Court decisions previously cited, when

faced with a motion to dismiss and a motion to substitute in response thereto, is to apply the language of § 52-109. Was the action under attack (1) commenced through "mistake" and (2) is substitution of the proper plaintiff "necessary for the determination of the real matter in dispute." This court will now try to analyze both of these tests or requirements of § 52-109.

As both Judge Sheldon and Judge Lewis note, "mistake" is not defined in § 52-109. The court in *DiLieto* notes that there is no legislative history and proceeds to analyze what the word was taken to mean in analogous common-law and statutory provisions meant to ameliorate other harsh pleading dictates at common law. The *DiLieto* court then says that from its analysis, it infers that the words "through mistake" in § 52-109 mean "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the lawsuit." *DiLieto* v. *County Obstetrics & Gynecology Group*, supra, 26 Conn. L. Rptr. 351. Judge Lewis in *Lupinacci* agrees with this definition of "mistake" as used in § 52-109. *Lupinacci* v. *Stamford*, supra, 48 Conn. Sup. 6. This court, at least, has difficulty with that definition in the sense that it appears too limiting and may be practically too difficult to apply. In *DiLieto*, the plaintiff erroneously believed its bankruptcy proceeding had ended so that the debtor, not the trustee, could sue in malpractice. Yet, how is "erroneous" different from "negligent behavior?" In other words, even given *DiLieto*'s facts, just as it is difficult to imagine a situation in which commencement of an action in the name of the wrong person would not implicate subject matter jurisdiction, it is also difficult to imagine a situation in which negligence has not led to use of the wrong party as the original plaintiff. Also, if the *DiLieto* test is used, how does one accommodate a situation in which there is a mere clerical error, typographical error or a mixup of

names in a case in which the action must be brought by a guardian or party with power of attorney on behalf of the real party in interest? *DiLieto* seems to recognize that clerical mistake situations would fall under the § 52-109 definition of mistake. Yet, how could it be said that a litigant honestly believed that they were the real party in interest when they clearly were not, and in a case like the present one, would have realized this was so immediately upon reading their own pleadings. Moreover, even in a *DiLieto* scenario, what does "honest conviction" mean; what evidentiary byways would have to be explored in many cases to meet that test? When the legislature used the word "mistake," a common sense appraisal of what it meant is merely to describe the context in which the statute was to apply—the lawyer named the wrong plaintiff.

Or, to examine the ambit of what was meant by "mistake" from another perspective, it is difficult to support a position that held an ameliorative statute like § 52-109 would apply when an honest conviction was held by the plaintiff that he or she was not the appropriate plaintiff based not on negligence but on a good faith conclusion. That, however, would not apply when, as here, the complaint lays out all the factual allegations and claims for relief indicating the person who suffered injury and calling him "plaintiff" *but* the heading of the complaint and summons just switched the name of the real party in interest with his "next friend." The phrase "next friend" constitutes words of art in any event, and are used to identify someone acting in a representative capacity on behalf of the real party in interest.

The court will now discuss the second test under § 52-109. It seems to this court that the legislature passed § 52-109 to save the courts from their own imposition of a too rigid application of at least one version of the common law and, in effect, was siding with cases like *New York Evening Post Co.* That case, more than

eighty years ago, held that the substitution of plaintiffs is allowed when there is no change in the cause of action, and "the party substituted bears some relation of interest to the original party and to the suit . . . ." *New York Evening Post Co.* v. *Chaloner*, supra, 265 F. 213. In other words, in applying our statute, the second test under § 52-109 is the crucial one in deciding whether a substitution of plaintiffs is to be allowed— is the substitution "necessary for the determination of the real matter in dispute." Implicit in these words is the notion that the substitution should not result in a change of the cause of action. Following the implications of *New York Evening Post Co.* and what our Supreme Court seemed to be saying in footnote 3 in *Mendillo*, "cause of action" means the factual allegations of the complaint purporting to show liability and the particular harm thereby caused to a specific person. In other words, the notion of a "cause of action" is separated out from the notion of the "standing" of a particular party to bring the cause of action. Section 52-109 can thus be perceived as imposing a rule permitting substitution that corresponds to the general law. Thus, 59 Am. Jur. 2d 748–49, Parties § 323 (2002), states: "Generally the propriety of substitution of parties depends on whether the cause of action remains the same and whether the party substituted bears some relation of interest to the original party and to the litigation. Courts have also held that substitution of plaintiffs should not be permitted where it will prejudice the defendant. Conversely, courts have allowed substitution in particular cases where the defendant was not prejudiced by the substitution . . . ."

In fact, *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993), seems to adopt such an analysis by referring to § 52-109 and Practice Book § 9-20 and then explicitly mentioning

rule 15 (c) of the Federal Rules of Civil Procedure. The court stated: "In the context of analogous rules of federal civil procedure, it has been observed that '[w]here the change is made on the plaintiff's side to supply an indispensable party or to correct a mistake in ascertaining the real party in interest, in order to pursue effectively the original claim, the defendant will rarely be unfairly prejudiced by letting the amendment relate back to the original pleading.' F. James & G. Hazard, Civil Procedure (2d Ed. 1977) § 5.7, pp. 167–68. 'As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. . . . Thus, an amendment substituting a new plaintiff [will] relate back if the added plaintiff is the real party in interest.' 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1501, pp. 154–57; see also *Health Research Group* v. *Kennedy*, 82 F.R.D. 21 (D.D.C. 1979) (substitution of real party in interest as plaintiff permitted to cure lack of standing of original plaintiff). An amendment to pleadings will relate back to its filing, at the very least, and back to the beginning of the action under appropriate circumstances. *Sharp* v. *Mitchell*, 209 Conn. 59, 70–75, 546 A.2d 846 (1988); *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 239–40, 429 A.2d 486 (1980); see also *Consolidated Motor Lines, Inc.* v. *M & M Transportation Co.*, 128 Conn. 107, 109, 20 A.2d 621 (1941). We see no reason why our general policy with respect to pleadings should not also apply in the context of the substitution of a plaintiff." *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, supra, 84–85.

As Wright, Miller and Kane further observe in commenting on the advisory committee note to the 1966 amendment to rule 15 (c): "the liberal attitudes toward

substitution of the real party in interest prescribed by both Rule 17 (a) and Rule 15 (c) are closely related." 6A C. Wright, A. Miller & M. Kane, supra, § 1501 pp. 159–60. In a further comment, which should emphasize the relationship between § 52-109 and rule 15 (c), the authors go on to say: "Although an amendment that seeks to add a new plaintiff who asserts an entirely different claim will not relate back, an amendment by which plaintiff seeks to add a claim in another capacity has been held to relate back by several federal courts." Id.; see, e.g., *Missouri, Kansas & Texas Railway Co.* v. *Wulf*, 226 U.S. 570, 33 S. Ct. 135, 57 L. Ed. 355 (1913); *Russell* v. *New Amsterdam Casualty Co.*, 303 F.2d 674 (8th Cir. 1962); *Shinkle* v. *Union City Body Co.*, 94 F.R.D. 631 (D. Kan. 1982). Under this reasoning, substitution would clearly seem appropriate when suit is not brought by the plaintiff child by means of the parent as next friend but instead the parent is alleged to be the plaintiff. As stated in *Lowe* v. *Shelton*, 83 Conn. App. 750, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004): "It is the infant, and not the next friend, who is the real and proper party. The next friend, by whom the suit is brought on behalf of the infant, is neither technically or substantially the party, but resembles an attorney or a guardian ad litem by whom a suit is brought or defended in behalf of another." (Internal quotation marks omitted.) Id., 756.

Coming back to the position adopted by Judge Sheldon in *DiLieto*, and, if *DiLieto* is right, as it must be if § 52-109 is to have the ameliorative purpose for which it was intended, then even assuming that the specter of subject matter jurisdiction rears its head, the statute meant to give the trial courts jurisdiction "for the limited purpose of determining if the action should be saved from dismissal by the substitution of plaintiffs." *DiLieto* v. *County Obstetrics & Gynecology Group*, supra, 26 Conn. L. Rptr. 349. In that context, the liberal principles

of the state and federal relation back doctrine should apply as *Federal Deposit Ins. Corp.* suggests in deciding the issue of substitution; no reason suggests itself why they should not. Under the relation back doctrine, adequate notice is the key issue. Did the defendant have adequate notice of the claim despite the mistake in naming the plaintiff? See 6A C. Wright, A. Miller & M. Kane, supra, § 1501, p. 162.

Applying these principles, let us turn to the pleadings in the present case. Using the § 52-109 tests as to the first requirement—of course, there was a "mistake." The action cannot be brought with the father, Marvin, as the named plaintiff, but the summons does identify the child, Tymar, as an "additional plaintiff." The body of the complaint itself, as previously discussed, refers, in several paragraphs, to the child, Tymar Wilson, as "the plaintiff" who was injured in the collision and who as "plaintiff" suffered damages. It says the "plaintiff" was "hurled violently about" the car's interior—obviously Tymar is being referred to and not his father. The claim for relief is signed by the plaintiff's counsel on behalf of the "plaintiffs." In response to the defendant's motion for summary judgment on the basis of a statute of limitations defense, an objection was signed by the attorney on behalf of the "plaintiffs."

In fact, the heading of the complaint is incongruous. It says "Marvin Wilson, Jr. PPA Tymar Wilson." Ballantine's Law Dictionary (3d Ed. 1969) and Webster's Third International Dictionary define "p.p.a." or "PPA" as "per power of attorney." The child cannot have been intended to have brought the present action exercising a power of attorney for a father who was not involved in the accident. Obviously a "mistake" occurred here.[1]

It is also true that to determine the "real matter in dispute" under the second § 52-109 test, substitution of the plaintiff must be allowed. The real matter in dispute

---

[1] See also the previous reference to the use of the words "next friend" in the complaint.

remains the same after the substitution is made because the very same factual allegations to establish liability will have to be proven under the complaint as well as the same causation to prove damages. There can be no claim, and none has been offered, that allowing the substitution will prejudice the defendant in any practical way in the business of defending himself against the factual allegations of the complaint just referenced.

The defendant's motion to dismiss is denied, and the motion filed by the named plaintiff for substitution is granted as well as the request for leave to amend the complaint.[2]

---

[2] *Isaac* v. *Mount Sinai Hospital*, 3 Conn. App. 598, 490 A.2d 1024 (1985), upheld the trial court's dismissal of the action and denied a motion to substitute and request for leave to amend the complaint. There, the plaintiff had brought a wrongful death action under General Statutes § 52-555 before she had been appointed administrator. She was appointed administrator after the statute of limitations had passed. The case preceded *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, supra, 31 Conn. App. 80, by several years, and § 52-109 was not referred to by the court or apparently by the parties.

In *Johndrow* v. *State*, 24 Conn. App. 719, 591 A.2d 815 (1991), the trial court dismissed the insurer's intervening complaint. This was upheld, with the court noting that under the Workers' Compensation Act; General Statutes § 31-275a et seq.; only the employer, not the employer's insurer, may intervene. Interestingly, the court said that the predecessor section to Practice Book § 9-20 permits substitution " 'for the determination of the real matter in dispute.' " *Johndrow* v. *State*, supra, 722 n.1. The court then went on to say that "[t]he real issue disputed in this action is the defendant's liability in tort and not the indemnification of another. Accordingly, this section does not apply to this case." Id. Exactly, the real issue in dispute in the case now before the court is the "defendant's liability in tort"—it will remain the issue in dispute after substitution, as it was before, so substitution should be permitted.