******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GRUENDEL, J., dissenting. In affirming the judgment of the trial court, the majority concludes that the court did not abuse its discretion when it denied the motion to substitute filed by the plaintiffs, Carl Youngman and Leslie Charm. I disagree, and write separately because I believe that the court abused its discretion in two respects. First, the court improperly ruled on the motion to dismiss filed by the defendants Joel Schiavone and Gary Bello[1] before ruling on the plaintiffs' motion to substitute. Second, although the court went on to consider the motion to substitute, in doing so, it misapplied the substantive requirements of General Statutes § 52-109. I, therefore, respectfully dissent from the majority opinion and would reverse the judgment of the court for further proceedings according to law.

I

I first address the court's determination that it could not consider the plaintiffs' motion to substitute because the plaintiffs lacked standing. As our court has previously held that § 52-109 extends jurisdiction to the extent necessary to rule on a motion to substitute, I would conclude that the court's ruling was incorrect and, thus, an abuse of discretion.

The following procedural history is relevant to the present appeal. On May 31, 2013, one day after the plaintiffs filed a motion to substitute, the defendants filed a motion to dismiss for lack of subject matter jurisdiction on the basis that the individual plaintiffs did not have standing because the harms alleged in the complaint were suffered by Quinnipiac Riverview Properties, LLC (Riverview). Nearly five months later, the court granted the defendants' motion to dismiss after concluding that the plaintiffs lacked standing in their individual capacities. The court then denied the plaintiffs' motion to substitute. On April 14, 2014, the court issued a memorandum of decision regarding its denial of the plaintiffs' motion to substitute, stating that "[b]ecause the plaintiffs did not have standing to bring this action, the court was deprived of subject matter jurisdiction to hear the claims or any motions, *including the motion to substitute*, of the plaintiffs." (Emphasis added.) It is this conclusion that I believe requires reversal.

This court previously has interpreted § 52-109 as authorizing a limited extension of jurisdiction for the purpose of considering a motion to substitute, even when the named plaintiff otherwise lacks standing. *Rana* v. *Terdjanian*, 136 Conn. App. 99, 109, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012). The rationale behind this conclusion is that for "§ 52-109 . . . to have the ameliorative purpose for which it

was intended . . . the statute is meant to give the trial courts jurisdiction for the limited purpose of determining if the action should be saved from dismissal by the substitution of plaintiffs." (Internal quotation marks omitted.) Id., 111. "The legislature's provision of this statutory remedy would be completely undermined by any rule requiring the immediate dismissal for lack of subject-matter jurisdiction of any action commenced in the name of the wrong person as plaintiff. The statute, as an exercise of the legislature's constitutional authority to determine [our court's] jurisdiction; [Conn. Const., art. V, § 1]; must be seen as an extension of that jurisdiction for the limited purpose of deciding a proper motion to substitute." (Internal quotation marks omitted.) Id., 111–12, quoting *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-970150435S (January 31, 2000) (26 Conn. L. Rptr. 345), rev'd on other grounds, 265 Conn. 79, 828 A.2d 31 (2003).

In the present case, the court determined that, because the plaintiffs lacked standing, it was precluded from entertaining any of their motions, including the motion to substitute. This reasoning is in direct opposition to our case law, which has concluded that § 52-109 extends the court's subject matter jurisdiction to the extent necessary to consider the plaintiffs' motion to substitute. As the majority notes, the court first was required to determine whether the statutory criteria for substitution had been met. If the motion was granted, then the standing issue would be remedied and the case could proceed with Riverview stepping into the shoes of the plaintiffs. *F.P., Inc.* v. *Collegium & Wethersfield, Ltd. Partnership*, 33 Conn. App. 826, 830–31, 639 A.2d 527, cert. denied, 229 Conn. 917, 642 A.2d 1211 (1994). If the motion was denied, the court then properly could grant a dismissal on the basis that the plaintiffs lacked subject matter jurisdiction. By failing first to consider the motion to substitute, the court misapplied the law and thus, abused its discretion.[2] *Hayward* v. *Hayward*, 53 Conn. App. 1, 8, 752 A.2d 1087 (1999) ("[o]ur review of a trial court's exercise of the legal discretion vested in it is . . . whether [it] *correctly applied the law* and could reasonably have reached the conclusion that it did" [emphasis added; internal quotation marks omitted]).

II

I next turn to the court's application of § 52-109. Notwithstanding the court's prior determination that it lacked subject matter jurisdiction, the court in fact did proceed to consider the motion to substitute. In denying the motion, the court concluded that a pure mistake of established law could not form the basis of the plaintiffs' requested substitution. I disagree and conclude that, under the statute and our relevant case law, the court

did not properly apply the correct legal standard in denying the motion to substitute.

Section 52-109 requires the court to conduct a two part inquiry. First, the court must determine whether the case was commenced by the wrong party through mistake. The term "mistake" in our case law has been defined as "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action]." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 151, 998 A.2d 730 (2010).[3] Second, the court must inquire as to whether the proposed substitution is necessary for the determination of the real matter in dispute. Id., 150.

In denying the plaintiffs' motion to substitute, the court noted that it was established law that the entity, Riverview, was the proper plaintiff to bring this action. Although it is true that "[a] member may not sue in an individual capacity to recover for an injury the basis of which is a wrong to the limited liability company"; *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008); a member may sue directly when the claim alleged is *separate and distinct* from that of other members. See *Guarnieri* v. *Guarnieri*, 104 Conn. App. 810, 823–24, 936 A.2d 254 (2007) (concluding shareholder of corporation had requisite standing to bring action on counts where no shareholder was similarly situated).

A review of the plaintiffs' complaint demonstrates that some of the claims allege individual harms. In the first count of the operative complaint, the plaintiffs alleged that they, individually, contributed funds for the purpose of purchasing real property. Although the property was intended to be held by Riverview's predecessor, Missy 2, LLC, the plaintiffs alleged that, on the day of the transaction, Schiavone took title to the property. In the fourth count, the plaintiffs alleged a breach of the covenant of good faith and fair dealing as to them as individuals. Each of these claims alleged harms that were separate and distinct from any harm to the limited liability company. Without reaching a determination on these issues, I acknowledge that there exists a reasonable legal basis from which the plaintiffs could have believed they were the proper parties to bring the action. See *Kortner* v. *Martise*, 312 Conn. 1, 10, 91 A.3d 412 (2014) ("[s]tanding . . . requires no more than a colorable claim of injury" [internal quotation marks omitted]); see also *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 281–82, 422 A.2d 311 (1979) ("well settled that if the injury is one to the plaintiff as a stockholder, and to him individually . . . where an alleged fraud . . . has affected the plaintiff directly, the cause of action is personal and individual"). As a result, reasonable diligence would not have apprised the plaintiffs

of their mistake.[4] See *DiLieto* v. *County Obstetrics & Gynecology Group*, supra, 26 Conn. L. Rptr. 350 (nonnegligent mistake is one made despite party's exercise of reasonable diligence to know truth). The foregoing analysis serves as an example where a mistaken belief in law can form the basis of a nonnegligent mistake under the statute. The court, therefore, abused its discretion when it incorrectly applied the law by summarily concluding that a mistake of law could not form a basis for substitution.

Further, the majority's conclusion is incongruent with our precedent in *Rana* v. *Terdjanian*, supra, 136 Conn. App. 99. In *Rana*, the original plaintiff, Anees U. Rana, brought an action against the defendant, Harry Terdjanian, after a limited liability company owned by Rana's wife purchased a business from Terdjanian. Id., 103–104. During trial, Rana testified under cross-examination that the business purchased from the defendant was actually owned by his wife's limited liability company. Id., 104. When the court raised, sua sponte, the issue of whether Rana had standing to bring the action, Rana filed a motion to substitute his wife's company as the plaintiff. Id., 104–105. In support of the motion, Rana stated that he had held a good faith belief that he was a part owner of the limited liability company and that he ran all managerial aspects of that business. Id., 105. In addition, Rana's counsel stated that, based on representations made to him, he held a good faith belief that Rana was the proper party to bring this action. Id. The trial court concluded that Rana had commenced the action by mistake, in ignorance of statutory authority, and granted the motion to substitute. Id., 112. This court, in affirming the trial court, concluded that the substitution remedied the prior standing issue and that it was "legally and logically correct" to grant the plaintiff's motion to substitute. Id., 112–13. In the present case, the plaintiffs and their attorney similarly believed that the plaintiffs were the proper parties to bring the action. Moreover, the plaintiffs in the present case actually had an ownership interest in the company and alleged that they, personally, had invested money in the business. In conclusion, I see no relevant distinction in these cases to warrant two different outcomes.

Finally, the trial court's analysis cannot be reconciled with the established principle, enunciated in *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 84, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993), that "[o]ur rules of practice . . . permit the substitution of parties *as the interests of justice require*." (Emphasis added.) Furthermore, "[t]hese rules are to be construed as to alter the harsh and inefficient result that attach to the mispleading of parties at common law." Id.; see also *Hagearty* v. *Ryan*, 123 Conn. 372, 375–76, 195 A. 730 (1937). "[I]t is well established that remedial statutes

such as § 52-109 must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 149. Although the proper standard of review is an abuse of discretion, "the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute *whenever possible* and *to secure for the litigant his day in court. . . .* The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a *strict adherence to them will work surprise or injustice. . . .* Rules are a means to justice, and not an end in themselves . . . ." (Citation omitted, emphasis added, internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 16, 776 A.2d 1115 (2001). I, therefore, disagree with the majority's conclusions that the court's denial of the plaintiffs' motion to substitute and its dismissal of the action was not an abuse of discretion.

For the foregoing reasons, I respectfully dissent.

[1] The plaintiffs named Joel Schiavone, Gary Bello, and Fair Haven Heights Realty, LLC, as defendants. The action was withdrawn as to Fair Haven Heights Realty, LLC. In this opinion, I refer to Schiavone and Bello collectively as the defendants and individually by name where appropriate.

[2] The majority concludes that the court did not abuse its discretion because it later went on to consider the plaintiffs' motion. After a careful review of the record, I am not convinced that the trial court properly considered the plaintiffs' motion in light of its prior ruling, granting the defendants' motion to dismiss.

[3] I concur with the majority that the definition of mistake is overly restrictive given the term's more expansive dictionary definition. See footnote 8 of the majority opinion. Considering the lack of legislative history, it is difficult to see how, consistent with the mandate of General Statutes § 1-2z, the proper definition of mistake is "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action]." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 151; cf. Black's Law Dictionary (9th Ed. 2009) (mistake defined as "[a]n error, misconception, or misunderstanding").

Other courts also have struggled with this definition of mistake. In *Wilson* v. *Zemba*, 49 Conn. Supp. 542, 549–50, 896 A.2d 862 (2004), the court stated that "it is . . . difficult to imagine a situation in which negligence has not led to use of the wrong party as the original plaintiff. . . . When the legislature used the word 'mistake,' a common sense appraisal of what they meant is merely to describe the context in which the statute was to apply—the lawyer named the wrong plaintiff."

Section 52-109 motions tend to arise in one of three narrow situations. The first is where the manager or shareholder of an organization brings the action individually where the proper plaintiff is the entity itself. See *Rana* v. *Terdjanian*, supra, 136 Conn. App. 112 (individual plaintiff commenced action against defendant for fraud, theft, and conversion related to plaintiff limited liability company); *Lupinacci* v. *Stamford*, 48 Conn. Supp. 1, 2, 823 A.2d 456 (2002) (individual plaintiffs commenced action against town regarding certain real property owned by limited partnership). Another situation is where the party who brings a claim is a parent and the harm alleged is to the minor child. See *Wilson* v. *Zemba*, supra, 49 Conn. Supp. 554 (father named plaintiff when alleged harm was to minor child). The last situation is where the named plaintiff is the party who entered into the contract or agreement, but at the time the action is initiated is no longer the party in interest. See *NewAlliance Bank* v. *Schaeppi*, 139 Conn. App. 94, 95–96, 54 A.3d 1058 (2012) (company that was party to contract subsequently merged to form new entity, which became successor in interest), cert. denied, 307 Conn. 948, 60 A.3d 737 (2013); *Zipp* v. *Florian*, judicial district of New

Britain, Docket No. CV-3101980 (November 13, 2006) (plaintiff entered into lease agreement with defendant but later transferred ownership of property to limited liability company); *DiLieto* v. *County Obstetrics & Gynecology Group*, supra, 26 Conn. L. Rptr. 351, 356 (plaintiff filed for bankruptcy and bankruptcy trustee substituted as plaintiff).

In each of these situations, reasonable efforts to understand the law would have led the parties involved to file the action under the proper plaintiff. Thus, it is unclear how courts are to distinguish between negligent and nonnegligent mistakes. Further complicating the matter is that, I suspect, in most cases, plaintiffs are relying on the advice of counsel, meaning the mistake is likely more often that of the lawyer's, rather than that of the plaintiff's. Subjecting a party to dismissal on the basis that they reasonably relied on the erroneous advice of counsel runs counter to the statute's remedial purpose.

[4] I also note the practical concern that the court's denial of a motion to substitute most often will result in the dismissal of the case. In a motion to substitute, the plaintiff bears the burden of establishing that he or she is the incorrect party to bring the claim and that a different party should be substituted. By doing so, the party must admit to the court that they lack standing. If the court denies the plaintiff's motion, the logical next step, given the plaintiff's admission, is to grant a motion to dismiss on the ground that the court lacks subject matter jurisdiction. In my view, this further emphasizes the need for the trial court to apply the substitution statute liberally in favor of those it was intended to protect. See *Okee Industries, Inc.* v. *National Grange Mutual Ins. Co.*, 225 Conn. 367, 373–74, 623 A.2d 483 (1993) (to extent remedial "statute leaves room for construction, we have construed its requirements liberally in order to implement the statute's remedial purpose").

_____