******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CARL YOUNGMAN ET AL. *v.* JOEL
SCHIAVONE ET AL.
(AC 36207)

Gruendel, Lavine and Mullins, Js.

*Argued December 8, 2014—officially released May 5, 2015*

(Appeal from Superior Court, judicial district of New
Haven, A. Robinson, J.)

*Irving H. Perlmutter*, with whom, on the brief, was *Andrew M. Ullman*, for the appellants (plaintiffs).

*Stephen P. Wright*, with whom, on the brief, was *Nicole L. Barber*, for the appellees (named defendant et al.).

*Opinion*

MULLINS, J. In this case, the plaintiffs, Carl Youngman and Leslie Charm, doing business as Restoration Associates (Restoration),[1] initiated this action in their individual capacities rather than in the name of the proper party, Quinnipiac Riverview Properties, LLC (Riverview), a limited liability company in which they and the defendant Joel Schiavone[2] are members. That mistake was deemed by the trial court to be a mistake that precluded the plaintiffs from substituting the proper party as the plaintiff and, consequently, deprived the court of subject matter jurisdiction. As a result, the court denied the plaintiffs' motion to substitute Riverview as the proper plaintiff and dismissed this action for lack of subject matter jurisdiction on the ground that the plaintiffs lacked standing. On appeal, the plaintiffs claim that the court abused its discretion in denying their motion to substitute and in granting the defendants' motion to dismiss. In light of our Supreme Court's controlling interpretation of the word "mistake" in *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 151, 998 A.2d 730 (2010), we affirm the judgment of the trial court.

The following facts and procedural history inform our review. On December 14, 2010, the plaintiffs filed a complaint against Schiavone, Gary Bello and Fair Haven Heights Realty, LLC (Fair Haven). On May 6, 2011, the defendant Fair Haven filed a notice of bankruptcy, and the plaintiffs, in turn, withdrew the complaint as to Fair Haven.

On February 7, 2013, the plaintiffs filed an amended complaint, alleging, in relevant part, the following:[3] Youngman and Charm are partners doing business under the trade name of Restoration Associates. "On or about August 30, 2010, and for more than five years prior thereto, the plaintiffs, as copartners doing business as Restoration, were the owners of a 66 2/3 percent ownership in [Riverview], a Connecticut limited liability company formerly known as the Missy 2, LLC ('Missy 2') the name of which was changed on December 14, 2006. . . . Throughout that period . . . Schiavone was the owner of the remaining 33 1/3 [percent] ownership interest in Missy 2 . . . . Between April 17, 2002, and August 22, 2005 . . . Schiavone represented to the plaintiffs that he owned or controlled the ownership of [five] properites in New Haven . . . [to wit] 22 Front Street, 621 Quinnipiac Avenue, 710 Quinnipiac Avenue, 714 Quinnipiac Avenue, and 715 Quinnipiac Avenue. . . .

"Between April 17, 2002, and November 28, 2005 . . . Schiavone offered to the plaintiffs a 50 percent ownership interest in Missy 2 for the sum of $250,000. . . . At the time of the offer, the other 50 percent ownership interest in Missy 2 was [held] by Alyxx Schiavone and

Josie Schiavone, the daughters of . . . Schiavone. . . . The plaintiffs accepted the offer[4] . . . and paid to Missy 2 the sums of money required to receive ownership of the 50 percent [interest] . . . from Schiavone. . . . [After] Schiavone had a disagreement with his daughters . . . the plaintiffs acquired, for consideration, an additional 16 2/3 percent ownership of Missy 2, [giving] the plaintiffs [an ownership interest of] 66 2/3 percent of Missy 2[5] . . . .

"On November 28, 2005, Missy 2 . . . purchased the real property located at . . . 740 Quinnipiac Avenue . . . with funds received from the plaintiffs and Missy 2, with title being taken in the name of Missy 2 . . . . [It was discovered, however, that] Schiavone, instead of taking title to the [other five properties] . . . in the name of Missy 2, took title to [those] properties in his own name and, until August 30, 2010, held [those] properties in his own name." (Footnotes added.) On December 14, 2006, Missy 2 changed its name to Riverview.

"Until August 30, 2010, despite representing to the plaintiffs that the properties would be transferred and conveyed to Missy 2 or [Riverview], [Schiavone] failed, refused and neglected to transfer the properties to Missy 2 or its successor [Riverview]. . . . From 2002 through 2006, the properties were always reported to the Internal Revenue Service . . . as being owned by Missy 2. . . . At all times from and after 2007, the properties were always reported to the Internal Revenue Service . . . as being owned by [Riverview]. . . . The operating agreement of Missy 2 [and, subsequently, Riverview] provided that no properties owned by the limited liability company could be sold or transferred in the absence of approval by a 'super majority' of the members of the limited liability company, as defined in the operating agreement, or in breach of the agreement of the plaintiffs and . . . Schiavone or in violation of the operating agreement of Missy 2 . . . . The plaintiffs owned 66 2/3 percent of the ownership of [Riverview], and this percentage constituted a 'super majority' of the ownership . . . as defined in the operating agreement.

"On August 30, 2010 . . . Schiavone transferred and conveyed, for no consideration, the properties at 22 Front Street, 621 Quinnipiac Avenue, 710 Quinnipiac Avenue, 714 Quinnipiac Avenue, 715 Quinnipiac Avenue and 740 Quinnipiac Avenue to [Fair Haven] . . . [whose members include] Schiavone . . . Bello . . . and James Byrne, the attorney for . . . Schiavone (who has since resigned from membership in [Fair Haven]). . . . [Also] on August 30, 2010 . . . Bello communicated with all of the tenants of the properties described . . . alleging that he was 'the manager-owner of [Fair Haven], the new owner of the . . . apartment,' making demand upon each of the tenants

to send him their monthly rent checks, directing them not to send the rent checks to the building manager employed by [Riverview], thereby disrupting the continued operation of the residential properties. . . . Schiavone and Bello continue to deny that the plaintiffs and [Riverview] have any interest in the properties."

On the basis of these facts, as alleged in their amended complaint, the plaintiffs, in their individual capacities, alleged against the defendants causes of action for breach of contract, conspiracy, unjust enrichment, breach of the covenant of good faith and fair dealing, a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and a count entitled "damages for transfer of property without consideration."

On March 14, 2013, the defendants filed an answer, special defenses, and a two count counterclaim to the plaintiffs' amended complaint. One of their special defenses alleged that the plaintiffs did not have standing on the ground that "[t]he claims they are making belong to Restoration . . . which is a general partnership by the plaintiffs' admission, or [Riverview], which is a limited liability company. Either and both entities have their own legal existence."[6]

On May 30, 2013, counsel for the plaintiffs filed a motion to substitute party plaintiff, explaining that the plaintiffs mistakenly had believed that they were the proper parties to institute the present action but that, following the release of *Padawer* v. *Yur*, 142 Conn. App. 812, 818, 66 A.3d 931 (trial court improperly denied motion to dismiss because individual plaintiff lacked standing when injury was to limited liability company), cert. denied, 310 Conn. 927, 78 A.3d 145 (2013), they became convinced that Riverview was the proper party to have instituted the case.

The next day, the defendants filed a motion to dismiss for lack of subject matter jurisdiction on the ground that the plaintiffs lacked standing to institute this case in their individual capacities. The court heard argument on the motion, wherein Youngman testified that he had instructed counsel to institute this action in the names of the individual plaintiffs because he thought they had suffered injury in their individual capacities. Following the hearing, on October 9, 2013, the court rendered judgment denying the plaintiffs' motion to substitute and granting the defendants' motion to dismiss in two separate orders.

In the first order, the court granted the defendants' motion to dismiss. The court ruled: "The named plaintiffs lacked standing to bring this action as individuals. That right belongs to the [limited liability company] under long-standing Connecticut law. Notwithstanding the fact that the individual plaintiffs might have erroneously believed that they possessed the legal right to

pursue this action, the law is clear and settled. They do not. Therefore, this court lacks subject matter jurisdiction and this action *must be dismissed. Procedurally, the court addressed the motion to dismiss first* and will address the motion to substitute second." (Emphasis added.)

In the second order, the court denied the plaintiffs' motion to substitute. The court ruled: "Notwithstanding the argument made by the plaintiffs' counsel, the law regarding who has the right to bring this action has been long established and is not new."

The plaintiffs thereafter filed a motion for articulation of the trial court's orders, and the court issued a memorandum of decision further articulating its rulings. The court explained that, despite the plaintiffs' contention that they only became aware that they should have brought their complaint in the name of their limited liability company, Riverview, after the Appellate Court issued its opinion in *Padawer*, "the law regarding this matter was not changed by *Padawer*. . . . Because the plaintiffs did not have standing to bring this action, this court was deprived of subject matter jurisdiction to hear the claims or any motions, including the motion to substitute, of the plaintiffs. Had the action been validly brought by the plaintiffs, reasonably believing, based on the law, that they had standing, and then the law changed during the pendency of the matter, depriving the plaintiffs of standing, then the court would have entertained the motion to substitute. But, the law regarding the rights of a limited liability company has not changed. For that reason, the motion was denied." Accordingly, the court ruled that the plaintiffs should have known that the limited liability company was the proper party because it was the long-standing law in Connecticut. This appeal followed.

On appeal, the plaintiffs claim that the court abused its discretion in denying their motion to substitute Riverview as the party plaintiff and that it improperly granted the defendants' motion to dismiss. A careful review of the court's order, granting the defendants' motion to dismiss, and its articulation leads us to two conclusions. First, we conclude that the court incorrectly determined that it should rule on the motion to dismiss before considering the plaintiffs' motion to substitute. Second, on the basis of language contained in our Supreme Court's decision in *DiLieto* v. *County Obstetrics & Gynecology Group*, *P.C.*, supra, 297 Conn. 151, we conclude that the court did not abuse its discretion in denying the plaintiffs' motion to substitute after determining that the plaintiffs had failed to establish that the law had changed such that they would not have known that the limited liability company was the proper party at the time they commenced this action.

Finally, we conclude, on the basis of the court's denial of the motion to substitute and the plaintiffs' admission

that they were the wrong party to institute this action, that the court properly found they lacked standing in this case. Accordingly, the court was without subject matter jurisdiction, and the motion to dismiss properly was granted.

"A determination regarding a trial court's subject matter jurisdiction is a question of law. . . . When the trial court draws conclusions of law, appellate review is plenary, and the reviewing court must decide whether the trial court's conclusions are legally and logically correct. . . . We further recognize that [t]he decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Citation omitted; internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 107–108, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012).

"[When] a motion to dismiss is filed on the ground that the plaintiff lacks standing, and the plaintiff quickly follows by filing a motion to substitute the correct party, the motion to substitute may be heard while the motion to dismiss is pending, notwithstanding the general rule that the subject matter jurisdictional issues raised by a motion to dismiss must be dealt with prior to other motions." J. Kaye & W. Effron, 2 Connecticut Practice Series: Civil Practice Forms (4th Ed. 2004) § 106.5, p. 213; see also *Rana* v. *Terdjanian*, supra, 136 Conn. App. 111.

In the present case, the trial court determined that, procedurally, it was considering the motion to dismiss for lack of standing before considering the motion to substitute. We conclude, however, that the trial court was not required to address the motion to dismiss before addressing the motion to substitute. Indeed, as we explained in *Rana*: "[I]t is well within the authority of a court to permit a substitution of plaintiffs in lieu of dismissing an action provided that the court determines that the conditions set forth in [General Statutes] § 52-109 have been met. We also agree with the reasoning of a number of trial court decisions that . . . 'if § 52-109 is to have the ameliorative purpose for which it was intended, then even assuming that the specter of subject matter jurisdiction rears its head, the statute is meant to give the trial courts jurisdiction for the limited purpose of determining if the action should be saved from dismissal by the substitution of plaintiffs.' . . . *Wilson* v. *Zemba*, 49 Conn. Sup. 542, 553, 896 A.2d 862 (2004), citing *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0150435-S (January 31, 2000) (26 Conn. L.

Rptr. 345), rev'd on other grounds, 265 Conn. 79, 828 A.2d 31 (2003). As the trial court in *DiLieto* aptly stated in its decision: 'The legislature's provision of this statutory remedy would be completely undermined by any rule requiring the immediate dismissal for lack of subject-matter jurisdiction of any action commenced in the name of the wrong person as plaintiff. The statute, as an exercise of the legislature's constitutional authority to determine [our court's] jurisdiction; [Conn. Const., art. V, § 1]; must be seen as an extension of that jurisdiction for the limited purpose of deciding a proper motion to substitute.' *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 26 Conn. L. Rptr. 348." *Rana* v. *Terdjanian*, supra, 136 Conn. App. 111–12. Despite the court's procedural statement, however, it did consider the plaintiffs' motion to substitute after granting the motion to dismiss.[7]

Thus, we next determine whether the court properly denied the plaintiffs' motion to substitute Riverview as the proper plaintiff in this action. On the basis of *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 151, we conclude that the court did not abuse its discretion in denying the motion in this case, the court having concluded that counsel should have known the law when he commenced this action on behalf of the plaintiffs.

"The decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Citations omitted.) *Poly-Pak Corp. of America* v. *Barrett*, 1 Conn. App. 99, 102, 468 A.2d 1260 (1983).

Pursuant to § 52-109, "[w]hen any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." In *DiLieto*, our Supreme Court explained that, "[u]nder § 52-109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff 'through mistake,' which properly has been interpreted to mean '*an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the* [action].' [*Wilson* v. *Zemba*, supra, 49 Conn. Supp. 549]." (Emphasis added.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 151–52.[8]

Here, it is undisputed that the plaintiffs commenced this action in the name of the wrong party and that

they now admit that the proper party plaintiff is Riverview. Aside from merely stating that they believed they were the proper parties to have commenced this action, the plaintiffs did not explain to the court why Riverview was not named as a plaintiff despite all of the allegations in the complaint concerning the harm allegedly caused to Riverview. Instead, they simply argued before the trial court that our 2013 decision in *Padawer* v. *Yur*, supra, 142 Conn. App. 812, made counsel aware that this case should have been commenced by Riverview and not by the plaintiffs in their individual capacities. Thus, the mistake in this case was, as the court determined, the result of the plaintiffs' and of counsel's belief that the law up until 2013 had permitted them to commence this action in their individual capacities.

As the trial court correctly noted in its articulation, however, *Padawer* did not change the established law. See General Statutes § 34-134 ("[a] member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement"). The dictates of § 34-134 have been the law at least since the statute's inception in 1993. Public Acts 1993, No. 93-267, § 20. *Padawer* simply restated this settled principle of law.

The plaintiffs do not contend that the law had changed, and they acknowledge that, at the time they commenced this action in 2010, the law commanded that the action be initiated in the name of Riverview, the limited liability company in which the plaintiffs are members. They did not argue otherwise before the trial court. In other words, the plaintiffs could not, and perhaps more specifically, did not, demonstrate to the trial court that their belief that they were the proper parties was a reasonable one, held in good faith, and not the result of their own negligence in failing to name the proper party. Consequently, under the circumstances in this case, we cannot conclude that the court abused its discretion in denying the plaintiffs' motion to substitute.[9]

Finally, having concluded that the court did not abuse its discretion in denying the plaintiffs' motion to substitute, we also conclude that the court properly determined that the plaintiffs lacked standing in this case. Indeed, given that the court denied the plaintiffs' motion to substitute and the plaintiffs *admitted* that they were the wrong parties to have commenced this action, the court properly found that they did not have standing to proceed with this matter in their individual capacities. Accordingly, the court was without subject matter juris-

diction, and the action properly was dismissed.

The judgment is affirmed.

In this opinion LAVINE, J., concurred.

[1] "[T]he use of a fictitious or assumed business name does not create a separate legal entity . . . [and] [t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name . . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his . . . ." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008).

[2] Gary Bello and Fair Haven Heights Realty, LLC, were also named as defendants. The action was withdrawn as to Fair Haven Heights Realty, LLC. In this opinion, we refer to Schiavone and Bello collectively as the defendants and individually by name where appropriate.

[3] We take the facts to be those alleged in the complaint, construed in the light most favorable to the plaintiffs. See *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010).

[4] The complaint contains no allegation as to the date this offer was accepted.

[5] The complaint contains no allegation as to the date this additional ownership interest was acquired.

[6] The defendants did not set forth this special defense in response to the plaintiffs' earlier complaint.

[7] The trial court did not explain how it could grant the motion to dismiss and *then* consider and deny the motion to substitute, after having already dismissed the action. Nevertheless, it is clear that the court ruled on both motions.

[8] Although the Supreme Court cited *Wilson* for this interpretation of mistake; see *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 151–52; this interpretation originally was set forth by the *trial court* in *DiLieto* in 2000 and was disavowed by the court in *Wilson* in 2004. See *Wilson* v. *Zemba*, supra, 49 Conn. Supp. 549–50 (concluding that trial court's definition of mistake in *DiLieto* was "too limiting" and "too difficult to apply," and holding that legislature meant nothing more than "the lawyer named the wrong plaintiff"); *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 26 Conn. L. Rptr. 351 (defining mistake as "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the lawsuit").

In seeking to ascertain the meaning of the term "mistake" as used in the statute, the trial judge in *DiLieto* noted that there was no legislative history and then proceeded to analyze what the word was taken to mean in the common law and analogous statutory provisions. *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 26 Conn. L. Rptr. 350–51. Reviewing the history of the decision in *DiLieto*, it is clear that, at the time of that trial court's decision in 2000—when the definition of mistake as "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the action" first was set forth—General Statutes § 1-2z had not yet been enacted by our legislature. See Public Acts 2003, No. 03-154, § 1 (enacting § 1-2z). When the Supreme Court issued its decision in *DiLieto* in 2010, however, and adopted the same definition that the trial court had set forth, § 1-2z was well established. See, e.g., *Board of Selectman* v. *Freedom of Information Commission*, 294 Conn. 438, 449, 984 A.2d 748 (2010). Nevertheless, our Supreme Court did not conduct an analysis of the plain language of § 52-109 before stating that this interpretation was the proper interpretation of that term.

The dictionary definition of mistake, however, is more expansive and, thus, seems more congruent with the remedial purpose of § 52-109. "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 616, 72 A.3d 394 (2013). Black's Law Dictionary (9th Ed. 2009) defines mistake, in relevant part, as: "An error, misconception, or misunderstanding; an erroneous belief." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines mistake as: "1: [A] misunderstanding of the meaning or implication of something. 2: [A] wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention . . . ." The American Heritage Dictionary (2nd College Ed. 1985) defines mistake, in relevant part, as: "1. An error or fault. 2. A misconception or misunderstanding. . . ."

None of these definitions defines "mistake" as an absence of negligence.

Rather, there is a clear commonality to each of these definitions, which includes error, misunderstanding, and misconception. Although these more expansive dictionary definitions appear to be more in line with the remedial purpose of the statute, it is not the interpretation that the court in *DiLieto* instructed is the proper interpretation of the term mistake as used in § 52-109. Because we are "an intermediate appellate court . . . we are not at liberty to overrule, reevaluate or reexamine controlling precedent of our Supreme Court." *Pite* v. *Pite*, 135 Conn. App. 819, 826, 43 A.3d 229, cert. denied, 306 Conn. 901, 52 A.3d 728 (2012).

[9] We are mindful, however, that the same sort of mistake at issue here, namely, a mistake of law, has been considered a good faith, nonnegligent mistake by our courts in other cases. For instance, in *DiLieto*, the plaintiff erroneously believed her bankruptcy proceeding had ended so that the debtor, not the trustee, could sue in malpractice. *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 147. The trial court found this to be a nonnegligent mistake, based on the facts presented regarding the plaintiff's reasons for believing that she was the proper party, notwithstanding the well established law that actions brought on behalf of a bankruptcy estate must be brought in the name of the trustee as the real party in interest. See id.; see also *Manning* v. *Feltman*, 149 Conn. App. 224, 233–34, 91 A.3d 466 (2014).

Additionally, in *Rana* v. *Terdjanian*, supra, 136 Conn. App. 112–13, this court found that the trial court had not abused its discretion in granting a motion to substitute after concluding that the mistake in commencing the action in the name of the wrong plaintiff was not the result of negligence. In that case, the self-represented plaintiff initiated his action in small claims court in his individual capacity. Id., 112. He was suing on behalf of a limited liability company, in which his wife was the sole member, to recover a debt owed by the defendant to the limited liability company. Id., 103–104. The plaintiff was not a member of the limited liability company, but his name appeared on the credit card and bank statements of the limited liability company. Id., 105. Just four months after the action was commenced, the defendant removed the case to the Superior Court, and the plaintiff retained counsel. Id., 103–104. Counsel filed an amended complaint, but did not correct the fact that the wrong plaintiff had commenced the action, and the defendant then filed a special defense alleging that Rana had no standing. Id., 104, 105 n.6. The issue of standing, however, was not raised again until the court, during trial, sua sponte, inquired whether the plaintiff had standing to pursue the case. Id., 104–105. The plaintiff responded to the court's inquiry by filing a motion to substitute the limited liability company as the proper plaintiff. Id., 105. After hearing argument on the motion, the court concluded that, at the time he commenced this action, the self-represented party had an honest conviction, entertained in good faith and not resulting from his own negligence that he was the proper party because (1) he was not aware of General Statutes §§ 34-134, 34-186 and 34-187; and (2) the evidence of his extensive role in operating the business owned by the limited liability company led to his belief that he was the proper party to commence the action. Id., 112. We concluded that the trial court properly allowed the substitution. Id., 112–13.

In both *DiLieto* and *Rana*, the trial court determined, *based on the facts presented to it*, that the original plaintiffs in those cases were not negligent in commencing their actions in their individual names, the court having been satisfied that there was a reasonable basis for the plaintiffs' belief that they were the proper parties.

In the present case, the plaintiffs contended that a recent case from the Appellate Court made counsel realize that Riverview was the proper party, rather than the individual plaintiffs. Although the dissent presents a well written opinion, the plaintiffs in this case presented nothing more than an argument that the law had changed when in fact it had not. On the basis of such an argument, what was the trial court to do? After hearing testimony and considering the argument of counsel, the trial court here concluded that the law had not changed and that, therefore, the plaintiffs, who were represented by counsel at the time this action was commenced, should have known that Riverview was the proper party. The plaintiffs offered very little in the way of explanation, both before the trial court and on appeal, as to why they were unaware of the established law and as to why the case was not commenced in the name of Riverview. Thus, here, we are unable to conclude that the court abused its discretion in denying the motion to substitute based on what was presented to it.